The next case is Google LLC v. EcoFactor, Inc. Document No. 22-1750. Document No. 22-1750. The next case is Google LLC v. EcoFactor, Inc.     The next case is Google LLC v. EcoFactor, Inc. That language in and of itself, one number determined based at least in part on five other numbers, is already pretty broad. There's no restriction on how those five input elements are used, no restriction on how simple or complex that calculation can be, in what order the inputs are used. Even the board called this a black box sort of calculation on appendix pages 24 and 25. So what did the board find wrong with the petition in this case? And this is really the key set of facts. Although the petition... Just the fact that we're dealing with five inputs, and each one of them is set out separately and distinctly, a distinct component. Correct, John. And those become distinct components in the claim. Don't we start with the assumption that each one of these are to be treated distinctly, individually, not combined? I would agree with the first part of that, Judge Rayner, that each one of them needs to be distinct in the prior art. And they were, in fact, mapped to distinct numbers in the prior art. So this is not a case where we picked out one number in the prior art and said it could represent two inputs or something like that. All five inputs were initially mapped to different numbers in the prior art. The problem the board had with it is that one of the inputs, namely input three, the first internal temperature at a third time, was used to calculate another of the inputs, which was input one. And that's where the board said it lacked this characteristic of distinctness. And I would like to point out something else. And that is that this claim element, by its very terms, requires that you produce one number, the output number, from five input numbers. And the only way that can happen is for the five input numbers to be somehow mathematically combined into the output. So at some point during the combination, if those five inputs are to contribute to the output as the claim requires, they have to be mathematically combined. So you end up in this odd situation where the board has placed a requirement against combination in a claim that ultimately requires the combination of all five inputs. Now how did the board do that? It certainly wasn't looking at the specification of the 753 patent, because the specification of the 753 patent, in fact, contradicts the board's interpretation of the claim. Maybe the focus on combining this is misplaced. And instead, we should be focusing on whether you can get one of the inputs and, I don't want to say combine, but the use of one of the inputs negates having to use another, like number three. I'm not sure I would agree with that entirely, Judge Reyna. And that's because I think the claim does require that each of the five inputs be identified in the prior art. That's undisputed. I think the claim does require that each of the five inputs needs to contribute to the output, because the output is based, at least in part, on each of the five inputs. But you disagree that each contribution has to be distinct. I would disagree that there's any restriction on how those inputs are ultimately combined to reach the output. I think the claim is, as the board said it was, a black box in that effect. There just is no restriction in the claim. And in fact, the specification of the 753 patent works in all relevant respects in the same way as the prior art. That is, the specification of the 753 patent is using inputs, some inputs, and combining them to reach another input, which is then ultimately used to finish off the calculation of the output. So if the board's interpretation is to be used, it would effectively exclude the specification of the 753 patent. And that matters, because there should be a presumption that if the board's interpretation… But if your argument is accepted, then we would effectively be rewriting the claims. I'm not sure, Your Honor. How would you be rewriting the claims? In what sense? We're negating the distinctness of one of the inputs. We're saying you don't have to… Oh, I see. You don't have to have… I don't think you would have to do that at all, Your Honor, because each of the inputs is mapped to a separate number in the prior art. So those inputs are initially distinct. It's just that they have to be combined at some point to reach the output. And that's all the claim requires, that in some way the inputs are in some way contributing to the output. The output is based, at least in part, on the input. So there's no restriction on how the inputs are ultimately combined, transformed, etc., to reach the output. At some point they have to be. But you don't have to read out the separate recitation of each of the inputs, because each of the inputs exists as a separate number in the prior art. And, in fact, if you try to do that, if the board tries to do that, then the board's interpretation would be excluding, effectively, the specification of the 753 patent. And I think the easiest way to see that is with input number 5, which is the forecasted temperature, because that, I understand, is not disputed by Ecofactor. The only way in which input number 5 is used and contributes to the calculation of the output in limitation 1M is via the calculation of input 1. So it's exactly analogous to the way the board is excluding the prior art in input 3. And that matters because the board's interpretation and the logic they used to get there should apply equally to each of the inputs. The board is just saying the inputs are recited separately in the claims, therefore they must remain distinct to the calculation, at least until you get to the output, and therefore that should apply equally to each of the inputs. And the fact that we have one input, input 5, the forecasted temperature, which is undisputedly used to calculate input 1, and that is the only way it contributes to the calculation of the output, you can fairly easily conclude that the board's interpretation of the claims would exclude everything that's relevant in the 753 patent. And there should be a presumption that that's an incorrect interpretation based on that. You've mentioned twice that the board recognized that what happens here can be in a black box. The board also said they agree with you that you can indirectly calculate, or there's no requirement that the first internal temperature must be used to directly determine the first time prior to said target time. They agreed with you on those points. How is it that we could conclude that they then somehow disagreed with you on this implicit claim construction that they didn't even tell us they were doing? Well, I think they ultimately found them for ecofactor, correct? And they didn't take issue with the way we presented it in the petition. They said, okay, we recognize what petitioners did in the petition, and we note that petitioners say input number 3 is used to calculate input number 1, and that's what we have a problem with because of, effectively, the application of the Becton-Dickinson case to this matter. And I think what the board was thinking there was that Becton represented a sort of per se black letter rule of claim construction. But they don't say any of that. That's a bunch of sort of trying to read between the lines. Why isn't it that they're just making a fact finding as to what your prior art disclosed, and they're just finding it didn't disclose element or subfactor 3 of 1M? I think it's because, Your Honor, there is no issue as to what the prior art says. Nobody disagrees with that. There is no issue as to how the petition presented it. There is only an issue as to how the board interprets the claims to say that the prior art does not have this limitation. And, of course, there are always two steps in these cases, right? There is always a statement, how do we understand the claims? Sometimes it's so clear you don't have to spell that out, but there's always that understanding in the background. And then you take the understanding of the claims and measure that against the prior art. So you always have this two-part analysis. And our dispute comes with the first part of the board's analysis. I don't see a counter argument where Ecofactor, for example, says, well, either way, under Google's construction or under the board's construction of the claims, the prior art wouldn't meet the claim limitation. It's really coming down to how the board interpreted the claims applying the Becton-Dickinson case. And I think they did that improperly. You think or argue that the board assumed that all of the elements were disclosed in your prior art. I'm not sure I saw that in the board's opinion. Did they come right out and say we're finding or we're assuming that everything is in the prior art that you pointed to? No, I don't think they said they found it, certainly. I think they accepted it as a premise for the basis of the decision. Is there somewhere you can point us to in the opinion? I believe it would be, and it may simply be implicit, Your Honor, but the one thing they don't do in the opinion is to say we have a problem with the way the petition presented it different from the application of Becton-Dickinson in this case. But for the application of Becton-Dickinson and the separately recited claim elements, there would be no issue as to the way the board wrote the opinion here. Can I just ask you, I think this is related. Did the board make a finding about and was there a dispute about whether a first internal temperature measured at a third time, that's the 1H. First of all, everybody agrees that the corresponding item in 1M refers to that third temperature, right? Correct, so 1M3 refers to 1H. Right, and was there a dispute about whether Wedekind shows such a third temperature being measured? There was a dispute in the patent owner response and the dispute centered around whether or not the third temperature was newly acquired. Right, I'm not sure if that's the same thing. So one, I guess, version of the question is you rely on, what is it, equation 12? Correct. And I think, just tell me if this is right, that you need the index J from 1 to N, you need N to be greater than 2. Correct. Why do we know that's greater than 2? Because Wedekind says that it's continuously measuring temperature. And 2 just wouldn't be enough for that. 2 just wouldn't be enough for that. And you can look at the text right above that equation on appendix page 580 where it says we're taking N measurements. It is going to have at least three measurements. And the argument below was by Ecofactor, the claim requires at least three internal temperature measurements, two of which are characterized as historic, one of which is simply the first internal temperature of the third time, but with no restriction on when that third time is. And so Ecofactor said, and this is one of the arguments rejected by the board, was that the third time, because it's not characterized as a historic time, has to be taken at a specific later point in time. And our argument was there simply is no restriction on how or when that first internal temperature at a third time. As long as it's a third time. As long as it's a third time. And there's no restriction preventing it from being used to calculate the thermal performance value, which is input number one. The claim just doesn't have that sort of negative limitation. Let me proceed to the Becton-Dickinson analysis for a second. I think one of the problems with the board's analysis under Becton-Dickinson... You're into your rebuttal time. Oh, I'm into my rebuttal time? Okay, let me just quickly talk about the forfeiture argument for a second. Because it follows on what Judge Toronto asked. The argument that Ecofactor made below, I think, was fundamentally different than the rationale that the board ultimately used to find in favor of Ecofactor under Becton-Dickinson. It had to do with whether or not this first internal temperature was newly acquired. But even if it were the same thing, such that we should have been on the notice of the Becton-Dickinson analysis, which hadn't been briefed by anyone or mentioned by anyone up until the final written decision, we responded to Ecofactor's argument by making essentially the same arguments we're making here, i.e. claim limitation 1M is broadly formulated, and the specification in relevant respects operates in the same way as the prior art. That is, some inputs are used to calculate other inputs, which are then used to finish off the determination of the output. And that position has been consistent for the petitioners throughout the case. Thank you, Your Honor. Good morning, Your Honors. Good morning. I think that, as an initial matter, Google did forfeit its claim interpretation here. Google filed the petition. It identified the issues for the board to consider. It identified claim construction issues in its petition. Nowhere does it indicate that the five data elements or input elements in limitation 1M should not be separate and distinct. In fact, when you look at the petition and how they set them out, Google is the one who listed them as five separate elements. How could they have had any sense that you thought that they had to be separate and distinct and remain separate and distinct all the way, I guess, up until the point where they're combined? They put that... Google was the one who separated them and addressed them each separately. And certainly they don't need to be distinct after or during that determination of that first time. It's based on that. The step of 1M is determining a first time prior to set target time. It's based on these five. And there's going to be some mixing, but beforehand they need to be separate starting points, if you will. Then what's wrong with their theory? What did the board find was missing from their theory? What the board found that was missing was that element 3, which is the first temperature at a third time, was not distinct. Because what Google did was they said, here in Weedekind are these thermal performance values, and they're based on these temperatures. And because those temperatures include a first temperature at a third time, that also meets claim element 3. And that's what the board found. And what precludes that from being a legitimate theory of invalidity? What precludes that is that then element 3 and element 1 are not separate and distinct from each other. And isn't that a claim construction statement? What requires them to be separate and distinct? The actual language of the claims. Meaning it's a claim construction question. I would argue it's not a claim construction issue, Your Honor, because what's happening here is the board, when doing an invalidity analysis, it's a two-step process, as Google's counsel noted. The first is you look to the language of the claim. And that's what the board did. It looked at the language, it looked at the words, it looked to see whether there was antecedent basis. How did that affect the understanding of the claims? And then it applied that. And so if that's considered claim construction, then claim construction occurs at every analysis of invalidity for every term in a claim. And so I don't think what happened here was truly claim construction, where they gave it a special meaning. What happened here was that the board looked at the claim language and said, all right, what does this require? It noted that there were five separate inputs that were distinctly listed out and noted that the determination step is based on those five distinct elements. Now, the example that Google gave in... Doesn't that set out some boundaries as to how the claims operate? Absolutely it does. Well, we have said in NetWord LLC versus Central Court that claim construction establishes a scope and boundaries of the subject matter that is pandemic. Why isn't that what happened here? What happened here, Your Honour, is the board looked at the language of the claims, which is what's required, and... It interpreted the language. But the court... It interpreted the language insofar as it looked at the actual word, the context, again, whether there was antecedent basis, how those things interpreted or influenced its understanding. But that would occur under every analysis in validity... ..throughout any claim limitation. And so what they did here was use the language of the claims to understand what they meant. That is, for example, looking at that... ..looking at the language that it was said first temperature at said third time. Well, to understand what did that mean, the court is required to look at... Sorry, the board is required to look at Limitation 1H, which provides acquiring said first temperature at the third time and provides additional information about it. That is, it gives... That antecedent basis provides context to how the board is going to understand and map that claim to the prior art. I would submit that's not claim construction in the sense of what you may be thinking of, where a court provides a special definition or is required to look at the specification to understand what a particular term meant. Rather, it's just normal, everyday analysis of the claim limitations that's performed for invalidity or even infringement. You mentioned the... Maybe it's a presumption that when you separately list elements in a claim that they're maybe meant to be separate. Do you think that the board treated our Vectin decision as a per se rule, that those things listed separately have to remain separate? No, Your Honour, I don't. And you can see it in the board's decision. Give me a second to get to that page. Page 26. Actually, page 25 is where they first cite to the Vectin case and quote it, and then include references to both Gauss and Engel Industries, including a parenthetical on Engel. But the very next full sentence that begins there toward the top of page 26 is, there's nothing in the asserted claims to suggest that one piece of data can be used to satisfy multiple inputs. I read that to say, Vectin gives us this understanding, this is what we would expect, but it's not a per se rule. It's a rule of reason we look to say here, but we assume that as a starting point, but then we look to the language of the claims... And it would be wrong to treat it as a per se rule, correct? Correct. Doesn't at that point it matter that since the language is not telling us whether any of the five items can be mathematically related to the others that the view the Board took would have troubling effects on what the spec covers? I don't know that I would agree, Your Honor, that the language of the claims is silent on that. When you look at both... When you list five mathematical entities, why would one think without something more that entity number three cannot be part of the calculation of entity number one? The antecedent basis for all five of those inputs gives us that understanding. Well, if there was something in the antecedent basis for the bigger one that said you cannot use a third internal temperature measurement, maybe, but it doesn't. No, it talks about historical temperature data. I presume you're talking about the thermal performance values and how it uses those first and second. That's the one that's at issue here, that incorporates a third internal temperature measurement. The Board said that's a no-no in Vatican. Right. What Vatican doesn't disclose is using any of those internal temperatures along with the thermal performance value and inputting that or using that as a basis for making this determination. All Vatican shows is using those internal temperatures and external temperatures and creating the thermal performance values. Then from there, Vatican then uses that along with the other three inputs. It never takes that thermal performance value, the characteristics of the climate control system, the external temperature at a third time, the weather forecast, and that first internal temperature at a third time and uses those five as a group, as a basis. Those are never together there at the start like that. What Vatican does is it takes that internal temperature and uses that to make that calculation. Now, in the reply... The third. The third, yes. In the reply, Google offered up, at page 17 in their reply brief, the simplistic model of five inputs and you would add them. The idea was that they then said, well, it would be easy if you were adding them. You would add input one and input two and you would get some intermediate value. That would be the simple way to do it. And then we'd move forward and add three and get intermediate, add four, and then add five. But that's not what Vatican is doing and that's why this doesn't work. Because what Vatican is doing is it's taking three and adding it to something to get one. So it is then adding one to two, but then two to four and then adding five. It's never adding three again, which is what the claims are talking about. The claims are showing those five distinct inputs as the starting point for determining a first time prior to said target time based on those five distinct inputs that it sets forth and provides the antecedent basis for how each of those five are obtained. They're each obtained distinctly and separately. Can I take you back to 25 and 26, where the board is citing to Becton, why should we not read these as statements about claim construction? Whether the board got Becton right or wrong, it's just a clear implication that they should remain separate or they always have to remain separate. Isn't that a statement of claim construction? I would argue, Your Honor, that that is a statement of guidance as to how they are reading the words of the claim and particularly claim limitation 1M. And did the parties have any dispute about the application of Becton to these claims in front of the board? No, Your Honor. I don't recall that there was any specific dispute on that issue. So wouldn't that have been a surprise to the petitioner here to see that they're basically losing the IPR based on an application of Becton that was never raised by the parties to the board? I don't think it was raised by the parties, Your Honor, because there was no dispute over how the claims could be read onto the prior art until the appeal here. Again, Google's petition was the one that set these five out separately and distinctly. Ecofactor followed on with that, and certainly Google appeared to do the same thing as Reply, and we filed in our certify with that. So to now, you know, the board followed that agreed with the parties and explained why with this. And so I don't think that that is something that was a surprise. But assuming that the court did engage in... I mean, the board engaged in tent construction, just looking at the record, that would have been a sui sponte ruling that the board made. If you assume that that was... that what the board did here with claim 1M was a claim of construction, then yes, that was something that was not raised by either party. Right, the court did it on its own. I mean, the board did it on its own. That's correct. Under those circumstances, how can we say that Google had opportunity to address that construction? Well, I think that that... If you make that assumption that this was claim construction and that it wasn't a normal analysis of the claims and understanding the claim language so you can map them, then the concern is... We should send it back. Well, I would submit, Your Honor, that what the board did here is absolutely consistent with how Google presented the claims. And it's explicit construction, if you will. If you call this a claim construction, what Google explicitly did was, in its petition, and the petition is at 437 and 438 of the record, it set forth these five inputs individually as distinct inputs. This is something Google offered up. So to the extent that this is now a construction, I don't see how they can say this was unfair or that they did not have notice of this when they were the ones who did it. Can I ask a question? Absolutely. On the assumption, which I know you disagree, that we agree with Google, that this is a claim construction issue and that the board got it wrong and that there's no requirement in this claim element that the various little i's and little v's are mathematically unrelated, is this an outright reversal or is there something to remand? Well, I think then if the issue is that this is a suit upon the claim construction, that the board, then I think... I just want to state, I don't care how we get to the proposition that this is a claim construction and that Google is right about it. Let's assume that. What's our proper disposition? Is there something to remand or is it an outright reversal because there's no remaining dispute about the application of that construction? I don't think there's a dispute about the underlying prior art. I would submit, Your Honor, that if you feel that Google is correct on this, then I would argue, though, that it was an insufficient briefing because there is... Since neither side would have been on notice, there may be prosecution history issues and a full understanding of the specification as to whether this is, in fact, the proper one. But if the court is, after looking at everything, is certain that Google is correct, then the proper decision would be then to reverse. To reverse. Any other questions? Thank you. Thank you. Mr. Stiff, we're going to restore you back to four minutes. Thank you, Your Honor. I have one quick point to make and then I'd like to respond to Judge Stark's early question about the final decision of the Board. I'm sorry, can I just be brief? Yes, please. I don't want to miss this. Isn't there an issue that the Board did not address about the combination of Wettigand and Google? For obviousness? For a remand? I'm not sure what that would be, Your Honor. No? Okay. I think that my counterpart is correct in stating that Google treated the claim elements in the petition as separate and distinct. We did, in fact. We recognized that they are separate and distinct and we mapped each of them against different numbers in the prior art. The next requirement for Claim Limitation 1M is that the output has to be based at least in part on each of those inputs that we separately mapped and we demonstrated that too. It's just that input number three, the way in which it is contributing to the output is via input number one. But there's no restriction in the claim language that would prevent that. And so I think maybe there's a little bit of a strawman argument going on here. And the strawman argument... Yes? But the claim language doesn't say to do that. You're doing something that the claim language does not say to do. I agree the claim language doesn't say to do that, but it doesn't say to do anything. It leaves the manner of the calculation completely open, Your Honor. And so I think mathematical combination of these inputs is entirely expected, especially because that's the way the specification of the 753 patent itself works. There's no way to do it and still have written descriptions for it in the specification of the 753 patent for the contribution of inputs three, four, and five to the output without finding that the board's interpretation of the claims is simply incorrect. At the end of the day, does it really matter whether the board engaged in claim construction or not, given that it seems to me that in both instances the findings that the board made were factually based and were dealing with substantial evidence as their standard here? I think it makes a difference, Your Honor, in the sense that the reason the board excluded the prior art here is because of its understanding of a restriction in claim limitation 1M based on the Becton case. And I think this dovetails with the answer to Judge Stark's question. And that is, Judge Stark, if you look at appendix pages 18 and 19 of the final written decision, the board goes over its understanding of the petition's arguments and does there acknowledge that the input number three, the first internal temperature, the third time, this is the bottom of appendix page 18, is mapped to a temperature in the prior art and that the thermal performance value is mapped to something else in the prior art. It then takes that understanding to appendix page 26 and in the quote that begins in the first full paragraph on appendix page 26, the board said in the second sentence, according to petitioner, Vatican base is T3, this is the output value of claim limitation 1M, which petitioner maps to the first time prior to set target time, on the first internal temperature because the first internal temperature is used to determine the thermal performance values of said structure. So it's recognizing that those two things are separate at that point. And then after the quotations it says, doing so effectively ignores the claim limitation by double counting the one or more thermal performance values of said structure. So the board here isn't saying, hey Google, you took one number and mapped it against two elements. The board is saying, we recognize that there are two elements, but when the math requires them to be combined, that's excluded by our analysis under Beckton-Dickinson and that's why that's a claim construction analysis. Thank you. Thank you for your arguments.